IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| JARICA "JAY" SUMLER,   )<br>   Plaintiff,   )<br>   )<br>   )<br>v.   )<br>   )<br>   )<br>LESAINT/TAGG LOGISTICS,   )<br>   Defendant.   )<br>   ) | No. 2:22-cv-02836-TLP-atc |

REPORT AND RECOMMENDATION FOR PARTIAL *SUA SPONTE*
DISMISSAL AND TO ISSUE PROCESS

On December 8, 2022, Plaintiff Jarica "Jay" Sumler filed a *pro se* complaint and a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) Sumler alleged Defendant Lesaint Logistics, currently operating as Tagg Logistics ("Lesaint"), violated her rights under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990 (the "ADA"). (ECF No. 1, at 1.) On December 29, 2022, the Court granted Sumler's motion to proceed *in forma pauperis*. (ECF No. 6.) This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, Apr. 29, 2013.)

**PROPOSED FINDINGS OF FACT**

Sumler used a Court-provided template for her complaint. The following findings of fact are gleaned from the complaint, as well as the second amended Charge of Discrimination Sumler

submitted to the Equal Employment Opportunity Commission.[1] In the section of her complaint describing Lesaint's alleged misconduct, Sumler checked boxes indicating Lesaint discriminated against her by terminating her employment, failing to promote her, imposition of unequal terms and conditions of her employment, and retaliation. (ECF No. 1, at 3.) She also checked boxes that indicate she was discriminated against based on her race, color, gender/sex, religion, national origin, disability, and age, though she does not describe on this form how she classifies herself within each of those categories. (*Id.* at 4.)

In the fact sections of her complaint, Sumler states that Lesaint "unlawfully discriminated against me, retaliated against me and wrongfully terminated my employment based on my color, sex, sexual orientation and religion in violation of Title VII of the Civil Rights Act of 1964, Family Medical Leave Act [and] Equal Pay Act." (*Id.* at 4.) More detail for the basis for those claims is found in her second amended Charge of Discrimination. There, Sumler asserts that Lesaint hired her on December 21, 2020, as an operations supervisor, where she initially worked under an African American male manager. (*Id.* at 6.) After the company hired a white man as its new general manager in May 2021, he immediately began harassing Sumler based on her "color, race, sex, sexual orientation and religion." (*Id.*) The harassment included derogatory racial

---

[1] As noted in more detail below, in determining whether a complaint fails to state a claim on which relief may be granted, the Court applies the standard found in Federal Rule of Civil Procedure 12(b)(6). Under that standard, the Court may take judicial notice of "EEOC charges and related documents like right-to-sue letters." *Ford v. Memphis-Shelby Cnty. Schs.*, No. 2:22-cv-02346-TLP-atc, 2023 WL 2948046, at *1 n.3 (W.D. Tenn. Jan. 21, 2023), *report and recommendation adopted in part*, 2023 WL 2429493 (W.D. Tenn. Mar. 9, 2023) (quoting *Simpson v. G4S Secure Sol. (USA), Inc.*, No. 12-cv-02875-STA-tmp, 2013 WL 2014493, at *3 (W.D. Tenn. May 13, 2013)); *see also Amini v. Oberlin Coll.*, 259 F.3d 493, 502–03 (6th Cir. 2001) (reversing a 12(b)(6) dismissal of a discrimination claim where the district court failed to consider the facts alleged in the plaintiff's discrimination charge, which was attached to his complaint). Sumler submitted three charges of discrimination to the EEOC and attached each of them to her complaint. (ECF No. 1-1, at 2–7.) The Court refers to the facts in the last of those charges, which incorporates the first two.

comments and slurs. (*Id.*) Sumler asserts that she was repeatedly denied incentive bonuses that other, male supervisors received. (*Id.*) When she complained of the disparity to management, the management team "starting attacking and harassing [her] in all ways possible." (*Id.*) She also did not receive her yearly bonus or the raise she was due on her one-year anniversary. (*Id.* at 7.) She "believe[s] [she] was discriminated and retaliated against because of [her] race (Black), color, sex, sexual orientation and religion." (*Id.* at 6.)

Sumler asserts that she was paid less than her male counterparts throughout her tenure at the company. (*Id.* at 7.) She also states that she returned to work from sick leave on February 1, 2022, and requested leave under the Family and Medical Leave Act ("FMLA"). (*Id.*) Three days later, she received a negative evaluation and was denied her yearly bonus and raise. (*Id.*) Four days after that, she was "falsely placed on a final written warning," which she refused to sign. (*Id.*) She was terminated the next day. (*Id.*) Sumler asserts that she was disciplined and discharged based on her race (Black), color, sex, sexual orientation, and religion, and in retaliation for making protected complaints in violation of Title VII, that she was discriminated and retaliated against based on her disability, and that Lesaint's actions violated the FMLA and Equal Pay Act ("EPA"). (*Id.*)

## PROPOSED CONCLUSIONS OF LAW

### I.     28 U.S.C. § 1915(e)(2) Screening

Under Local Rule 4.1(b)(2), the Clerk of the Court will only issue summonses in cases with non-prisoner *pro se* plaintiffs who are proceeding *in forma pauperis* at the Court's direction after the Court conducts a screening under 28 U.S.C. § 1915(e)(2)(B). Under that provision, the Court shall dismiss the case at any time if it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief

against a defendant who is immune from such relief." This report and recommendation constitutes the Court's screening.

## II.     Standard of Review for Failure to State a Claim

The Court evaluates Sumler's claim under the Federal Rule of Civil Procedure 12(b)(6) standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). The Court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). Pleadings provide facial plausibility when they present "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"[A] pleading filed *pro se* is to be liberally construed and held to less stringent standards than a pleading filed by counsel." *Kondaur Capital Corp. v. Smith*, 802 F. App'x 938, 945 (6th Cir. 2020) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Nevertheless, *pro se* litigants "are

not exempt from the requirements of the Federal Rules of Civil Procedure." *Wright v. Penguin Random House*, 783 F. App'x 578, 581 (6th Cir. 2019) (citing *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006)); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot 'create a claim which a plaintiff has not spelled out in his pleading.'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

In pleading employment discrimination claims, "[a] claimant need not . . . allege facts establishing a prima facie case of disability discrimination to survive a motion to dismiss under Rule 12(b)(6)." *Morgan v. St. Francis Hosp.*, No. 19-5162, 2019 WL 5432041, at *1 (6th Cir. Oct. 3, 2019) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002)); *see also Chapman v. Olymbec USA, LLC*, No. 2:18-cv-02842-SHM-tmp, 2019 WL 5684177, at *8 (W.D. Tenn. Nov. 1, 2019) (citing *Keys v. Humana*, 684 F.3d 605, 610 (6th Cir. 2012)) ("The satisfaction of every element of a prima facie case at the motion-to-dismiss stage is not required."). In other words, "so long as a complaint provided an adequate factual basis for a discrimination claim, it satisfies the pleading requirements of Federal Rule of Civil Procedure 8(a)(2)." *Morgan*, 2019 WL 5432041, at *2 (Griffin, J., concurring in part, dissenting in part) (quoting *Serrano v. Cintas Corp.*, 699 F.3d 884, 897 (6th Cir. 2012)). Nevertheless, whether a plaintiff can state a *prima*

5

*facie* case for discrimination "is illustrative of whether she has provided an adequate factual basis for her claims." *Chapman*, 2019 WL 5684177, at *5.

**III.   Sumler's Title VII Claims**

"Title VII of the Civil Rights Act of 1964 makes it 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Blackburn v. Shelby Cnty.*, 770 F. Supp. 2d 896, 918 (W.D. Tenn. 2011) (quoting 42 U.S.C. § 2000e-2(a)(1)). "Title VII also prohibits an employer from 'discriminat[ing] against any of [its] employees . . . because [an employee] has opposed any practice made an unlawful employment practice by [Title VII], or because the employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." *Downing v. Astrazeneca Pharms. LP*, No. 3:22-CV-00447, 2023 WL 4672411, at *2 (M.D. Tenn. July 20, 2023) (quoting 42 U.S.C. § 2000e-3(a)). The essential elements of a Title VII claim are (1) that the plaintiff is a member of a protected group; (2) that she was subjected to an adverse employment decision; (3) that she was qualified for the position; and (4) that either similarly situated non-protected employees were treated more favorably or she was replaced by someone outside her protected class. *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 654–55 (6th Cir. 2015); *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010).

Here, Sumler sufficiently alleges that Lesaint discriminated against her based on her race and sex. As a Black woman, Sumler is a member of a protected class. *See Jones v. City of Jackson*, 335 F. Supp. 2d 865, 869 (W.D. Tenn. 2003) (finding that Black plaintiffs were members of a protected class); *Haley v. Gen. Elec. Co.*, 3 F. App'x 240, 247 (6th Cir. 2001) (noting that women are a protected class). Sumler also alleges several adverse actions taken against her by

6

Lesaint, including that it failed to promote her, provided unequal employment terms, and terminated her and that her similarly situated male peer supervisors were treated more favorably than she.[2] Given the sufficiency of her pleading as to her Title VII claims based on race and sex, the Court recommends that she be allowed to proceed on these claims.

Sumler has failed, however, to sufficiently allege that she was discriminated against based on her religion, color, or national origin. To state a religious discrimination claim, Sumler must show "(1) [s]he holds a sincere religious belief that conflicts with an employment requirement; (2) [s]he has informed the employer about the conflicts; and (3) [s]he was discharged or disciplined for failing to comply with the conflicting employment requirement." *Bolden v. Lowes Home Centers, LLC*, 783 F. App'x 589, 597 (6th Cir. 2019) (quoting *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007)). Sumler does not identify her religion or how her religious beliefs conflicted with any of her employment requirements. She does not allege that she told Lesaint about any such conflict, and she fails to tie any of Lesaint's alleged acts to her religious beliefs. Because she does not, it is recommended that her claim for religious discrimination be dismissed.

Sumler's color-based discrimination claim is similarly infirm. Discrimination claims based on color are distinct from claims based on race "in that the former 'arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African-American individual is discriminated against in favor of a light-colored African-American individual.'" *Murrell v. Barrel*, No. 2:13-cv-2619-SHM-dkv, 2013 WL 6231174, at *4 (W.D. Tenn. Dec. 2, 2013) (quoting *Moore v. Food Lion*, No. 3:06–0712, 2007 WL 596955, at *2 (M.D. Tenn. Feb. 21, 2007)). As was the case in *Murrell*, Sumler's allegations

---

[2] The Court infers from Sumler's complaint that she was qualified for the position she held, thus satisfying the third element of her Title VII prima facie case.

are "devoid of any hint that [her] particular skin tone motivated the alleged discrimination." *Id.* (quoting *Bryant*, 288 F.3d at 133 n.5). It is therefore recommended that her discrimination claims based on color be dismissed.

Sumler's national origin discrimination claims are equally unsupported. "'National origin' refers to the country of birth, or the country from which a person's ancestors came." *Norbuta v. Loctite Corp.*, 1 F. App'x 305, 311 (6th Cir. 2001) (citing *Espinoza v. Farah Mfg. Co., Inc.*, 414 U.S. 86, 88–90 (1973)). "[N]ational origin discrimination is distinct from race discrimination." *Reynolds v. Solectron Glob. Servs.*, 358 F. Supp. 2d 688, 692 (W.D. Tenn. 2005) (citing *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991)). Sumler asserts no facts related to her or her ancestors' national origin. None of her allegations suggest that Lesaint's alleged discrimination was based on national origin. It is therefore recommended that her national origin claims be dismissed.

Finally, Sumler sufficiently states a claim of retaliation. A claim of retaliation under Title VII "need only allege facts sufficient to allow the court to 'draw the reasonable inference' that the employer discriminated or retaliated against the plaintiff." *Downing*, 2023 WL 4672411, at *2 (citing *Keys*, 684 F.3d at 610). The alleged retaliation "must be tied to Plaintiff opposing a practice made unlawful under Title VII or making a charge or participating in a Title VII investigation or proceeding." *Id.* (citing 42 U.S.C. § 2000e-3(a)). Here, Sumler adequately alleges the first option: she alleges that Lesaint retaliated against her by limiting her pay and, eventually, by firing her after she complained to multiple members of Lesaint's management for, among other things, being subjected to unequal terms and conditions of her employment. Because those allegations are sufficiently tied to unlawful acts under Title VII, it is recommended that Sumler's retaliation claims under Title VII be allowed to proceed.

### IV.     Sumler's ADA Claim

"The ADA prohibits discrimination by a covered entity 'against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation job training, and other terms, conditions, and privileges of employment.'" *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702–03 (6th Cir. 2008) (quoting 42 U.S.C. § 12112(a)).  The first element of demonstrating discrimination under the ADA is to plead a disability.  *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 936 (6th Cir. 2000).

"The ADA defines a 'disability' as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such an individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." *Id.* at 703 (internal quotation omitted); 42 U.S.C. § 12102(1)(A)–(C).  "It is well settled that not every physical or mental impairment constitutes a disability under the specific parameters of the ADA." *Gamble v. Sitel Operating Corp.*, No. 15-2789-SHL-dkv, 2015 WL 13745085, at *6 (W.D. Tenn. Dec. 17, 2015), *report and recommendation adopted*, 2016 WL 1573004 (W.D. Tenn. Apr. 19, 2016) (quoting *Daugherty*, 544 F.3d at 703).  "If an employee's condition does not meet one of these categories of disability even if he was terminated because of some medical condition, he is not disabled within the meaning of the Act.  The ADA is not a general protection for medically afflicted persons." *Walker v. Delta Med. Ctr.-Acadia*, No. 2:16-cv-02909-SHM-egb, 2017 WL 9440780, at *3 (W.D. Tenn. July 10, 2017), *report and recommendation adopted*, 2017 WL 3425188 (W.D. Tenn. Aug. 9, 2017) (quoting *Evola v. City of Franklin, Tenn.*, 18 F. Supp. 3d 935, 945 (M.D. Tenn. 2014)) (internal alterations omitted).

Here, other than checking boxes on the complaint form indicating a claim under the ADA based on disability, Sumler makes no allegations that she has a disability. When a party fails to allege her disability, she cannot recovery under the ADA. *See Currie v. Cleveland Metro. Sch. Dist.*, No. 1:15 CV 262, 2015 WL 4080159, at *4 (N.D. Ohio July 6, 2015) (collecting cases that support the proposition that "[a] complaint alleging an ADA violation is properly dismissed for failure to identify a disability"); *Bush v. Millington Health Care*, No. 2:14-cv-02663-SHL-dkv, 2014 WL 6815418, at *9 (W.D. Tenn. Dec. 2, 2014) (dismissing the plaintiff's ADA claims for, inter alia, failing to identify the disability). Sumler's failure to allege that she has a disability precludes recovery under the ADA. The Court therefore recommends dismissal of those claims.[3]

## V.   Sumler's FMLA Claim

Under the FMLA, eligible employees have "the right to take up to 12 weeks of leave per year when the employee suffers from a 'serious health condition that makes the employee unable to perform the functions' of her job." *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 572 (6th Cir. 2023) (quoting 29 U.S.C. § 2612(a)(1)(D)). The Sixth Circuit "recognizes two distinct theories for recovery under the FMLA: (1) the entitlement or interference theory under 29 U.S.C. § 2615(a)(1), and (2) the retaliation or discrimination theory under 29 U.S.C. § 2615(a)(2)." *Id.*

---

[3] Sumler did not check the box indicating that she was discriminated against under the Age Discrimination in Employment Act of 1967 (the "ADEA"). However, elsewhere in her complaint she checked the box selecting age as one of the bases for Lesaint's discrimination against her and indicated she was thirty-eight years old at the time that the alleged discrimination occurred. (ECF No. 1-1, at 4.) Establishing a *prima facie* case of age discrimination requires a plaintiff to "show that: (1) she was over 40 years old; (2) she suffered an adverse employment action; (3) she was qualified for the position she held; and (4) she was either replaced by a person outside the protected class or treated differently than similarly-situated individuals." *Smith v. Wrigley Mfg. Co., LLC*, 749 F. App'x 446, 448 (6th Cir. 2018) (quoting *House v. Rexam Beverage Can Co.*, 630 F. App'x 461, 462 (6th Cir. 2015)). Sumler fails to allege the first or fourth element and provides no other age-related allegations in her complaint. To the extent she seeks recovery under the ADEA, the Court recommends that claim also be dismissed.

(citations and quotations omitted). The "interference theory applies when an employer attempts to 'interfere with, restrain, or deny the exercise of or the attempt to exercise' any FMLA leave rights." *Id.* (quoting 29 U.S.C. § 2615(a)(1)). The retaliation or discrimination theory, in contrast, requires an employee to show:

> (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006) (citing *Arban v. West Publ'g Corp.*, 345 F.3d 390, 404 (6th Cir. 2003)).

Sumler, who appears to be proceeding under the retaliation or discrimination theory, has sufficiently alleged each of the required elements. She satisfies the first three elements by alleging that, three days after requesting FMLA leave from her human resources manager on February 1, 2022, she was given a negative evaluation and was denied her yearly raise and bonus. (ECF No. 1-1, at 7.) As to the fourth, the proximity in time between her attempt to exercise her FMLA rights and the alleged adverse employment action establishes a causal connection. *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001). It is therefore recommended that Sumler's claims under the FMLA retaliation or discrimination theory be allowed to proceed.

## VI.   Sumler's EPA Claim

Finally, Sumler alleges that Lesaint discriminated against her under the EPA, which "prohibits employers from discriminating against an employee on the basis of sex by paying lower wages than are paid to employees of the opposite sex for performing equal work." *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 507 (6th Cir. 2021). "[T]o state an EPA claim . . . , Plaintiff must allege facts sufficient to allow the court to reasonably infer that Defendant paid Plaintiff, as a

11

female, a rate less than that paid to an employee of the opposite sex for performing equal work." *Smith v. FedEx*, No. 2:18-cv-02666-JTF-tmp, 2019 WL 3014134, at *2 (W.D. Tenn. July 10, 2019). Sumler alleges that she "was denied my incentive bonuses that all the male Supervisors received" and that she "was not paid [the] same rate as my male counterparts, who had equal titles and job responsibilities." (ECF No. 1-1, at 6–7.) Those allegations are sufficient to put Lesaint on notice of Sumler's EPA claim. The Court therefore recommends that her claim under the EPA be allowed to proceed.

## **RECOMMENDATION**

For the foregoing reasons, the Court recommends that Sumler's Title VII claims for discrimination based on color, religion, and national origin and her claims for discrimination under the ADA and ADEA be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted. The Court recommends that Sumler be allowed to proceed with her Title VII claims for race and sex discrimination and retaliation and her claims under the FMLA and EPA and that issuance of process on Defendant be ordered.

Respectfully submitted this 24th day of August, 2023.

>     s/Annie T. Christoff
>     ANNIE T. CHRISTOFF
>     UNITED STATES MAGISTRATE JUDGE

## **NOTICE**

Within fourteen (14) days after being served with a copy of this report and recommendation disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute waiver of objections, exceptions, and further appeal.